UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARATHON PETROLEUM
COMPANY, L.L.C.,

                              CASE NO. 2:09-CV-13804
            Plaintiffs,       JUDGE JOHN FEIKENS
                              MAGISTRATE JUDGE PAUL J. KOMIVES

v.

MIDWEST MARINE, INC., et al.,

           Defendants,

                                         /

**OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART THE PARTIES' MOTIONS TO
AMEND (Doc. Entries 30 and 33) THE STIPULATED THIRD AMENDED INJUNCTION
(Doc. Ent. 28) AND THE AMENDED STIPULATED ORDER ESCROWING FUNDS
AND APPOINTING A RECEIVER (Doc. Ent. 24)**

**I.    Opinion**

**A.    Background**

Michigan Marine Terminal, Inc. ("MMT"), and Marathon Petroleum Company, L.L.C. ("Marathon"), entered into a Asphalt Terminaling Agreement, effective March 1, 2006, Doc. Ent. 1-3 at 1-16. The agreement was amended on March 5, 2006 and February 15, 2007. Doc. Ent. 1-3 at 17, 18-20. Section 3.1 of the agreement provides that MMT "shall provide and maintain [certain] Facilities at the Terminal for performing the Services[.]" Doc. Ent. 1-3 at 2 ¶ 3.1.

Pursuant to the agreement, MMT was to "[p]rovide all heating necessary to maintain the temperature of Products delivered by MPC . . . at a minimum of 250°F and a maximum of

300°F." Doc. Ent. 1-3 ¶ 4.1c. Section 5 of the agreement set forth provisions for compensation. Doc. Ent. 1-3 ¶¶ 5.1-5.4.

The agreement further provided that "MMT shall be responsible for any contamination or loss of the Product which results from MMT's fialure to comply with the terms of this Agreement, or the negligence, recklessness, or intentional misconduct of MMT, its agents, contractors, or customers[.] MMT shall be deemed to have taken title to the affected Product upon the occurrence of any loss or contamination for which it is responsible, and shall pay MPC, within 15 days after the occurrence, for the value of such Product based on MPC's posted Detroit Rack price for such Product as of the date of occurrence." Doc. Ent. 1-3 ¶ 8.3a. The agreement also provides that "[t]o the extent that the Incident is caused by or arises from the negligence or willful misconduct of MPC, then the cost of such Response . . . shall be borne by MPC, and MPC shall defend, indemnify and hold harmless MMT from all third-party and government claims arising out of the Incident[.] However, MPC's indemnity obligations shall not extend to those claims arising from any negligence, or willful misconduct, on the part of the MMT, its employees, agents, or contractors in performing the Response." Doc. Ent. 1-3 ¶ 8.7a.[1]

Marathon alleges that on May 21, 2009, "a tank designated as Tank 'B' ruptured and spilled in excess of 12,758.20 tons of liquid asphalt into the surrounding concrete containment dikes at the Facilities ('the spill')." Doc. Ent. 1 ¶ 21. "The spill prevented the transfer and proper storage of 1,637.9 tons of liquid asphalt in tanks designated as Tanks 'A,' 'C' and '109.'" It has been "represented that this liquid asphalt is recoverable and not lost." Doc. Ent. 1 ¶ 24.

---

[1] The agreement also contains provisions regarding indemnity. Doc. Ent. 1-3 ¶¶ 11.1-11.3.

Marathon further alleges that "[t]itle to the liquid asphalt that was the subject of the spill passed to Defendants on May 21, 2009." Doc. Ent. 1 ¶ 30. It is Marathon's position that "[d]efendants failure to compensate Marathon for the contaminated and lost product due to the spill is a default of Defendants' obligations under [Section 10.2 of] the Agreement." Doc. Ent. 1 ¶ 39. On June 5, 2009, Marathon "sent formal communication to Defendants notifying of the default of the Agreement." Doc. Ent 1 ¶ 40; Doc. Ent. 1-4 at 1-2.

**B.     The Original and Amended Complaints**

Marathon filed this lawsuit on September 25, 2009 against defendants Midwest Marine, Inc., MMT, Walter S. Cytacki, Alfred Cytacki and Alicia Cytacki Krall. Doc. Ent. 1 ¶¶ 2-6. The causes of action include (I) breach of contract asphalt terminaling agreement (¶¶ 43-48); (II) unjust enrichment/quantum meruit (¶¶ 49-63), (III) promissory estoppel (¶¶ 64-72); (IV) liability of Walter Cytacki, Alfred Cytacki and Alicia Cytacki Krall (¶¶ 73-89); and (V) warehouseman's liability (¶¶ 90-98).[2]

On October 26, 2009, defendants filed an answer to the complaint. Doc. Ent. 9. On the same day, defendants Midwest Marine and MMT filed a verified counter complaint. Doc. Ent. 11. The counter claims are (1) assumpsit / breach of contract (¶¶ 14-20); (2) negligent and willful misconduct of Marathon (¶¶ 21-38); (3) account stated (¶¶ 39-43); (4) quantum meruit and/or unjust enrichment (¶¶ 44-46); (5) breach of implied contract (¶¶ 47-51); and (6) promissory estoppel (¶¶ 52-56). On November 13, 2009, plaintiff filed an answer to the counter complaint. Doc. Ent. 14.

---

[2]Within this cause of action, plaintiff cites Mich. Comp. Laws §§ 440.7102 and 440.7204(1). Doc. Ent. 1 at 12-13 ¶¶ 94, 95, 97.

On January 5, 2010, I entered a stipulated order regarding the first amended complaint. Doc. Ent. 19. On January 6, 2010, plaintiff filed a first amended complaint against the same defendants. Doc. Ent. 21 ¶¶ 2-6. The causes of action include (I) breach of contract asphalt terminaling agreement (¶¶ 49-54); (II) unjust enrichment/quantum meruit (¶¶ 55-70), (III) promissory estoppel (¶¶ 71-79); (IV) liability of Walter Cytacki, Alfred Cytacki and Alicia Cytacki Krall (¶¶ 80-96); and (V) warehouseman's liability (¶¶ 97-106), as well as the additional cause of action (VI) conversion (¶¶ 107-118). On January 25, 2010, defendants filed an answer to the first amended complaint. Doc. Ent. 22.

**C.     Several Stipulated Orders Have Been Entered**

On October 2, 2009, plaintiff filed an emergency motion for temporary restraining order and preliminary injunction. Doc. Ent. 5. However, on October 27, 2009, Judge Feikens entered a stipulated order regarding this motion. Doc. Ent. 13.

On January 5, 2010, I entered a stipulated order escrowing funds and appointing a receiver. Doc. Ent. 20. On January 28, 2010, I entered an amended stipulated order regarding preliminary injunction. Doc. Ent. 23.

On February 1, 2010, I entered an amended stipulated order escrowing funds and appointing a receiver. Doc. Ent. 24. On March 26, 2010, Judge Feikens entered a stipulated third amended injunction. Doc. Ent. 28.

**D.     Attempts to Amend the Stipulated Orders**

**1.     Plaintiff's May 4, 2010 Emergency Motion to Amend (Doc. Ent. 30)**

On April 20, 2010, counsel for the parties spoke on the phone about "the sale of liquid asphalt presently contained in Tank 109 at the facilities of Midwest Marine, Inc., d/b/a [MMT]."

Doc. Ent. 30 at 4 ¶ 15; Doc. Ent. 30-2. In a letter dated April 21, 2010, plaintiff's counsel summarized counsel's agreements, such as "Marathon may sell the liquid asphalt[,]" and "MMT would provide access if needed, during normal business hours, for any prospective purchaser to evaluate the liquid asphalt, analyze the manner of transfer from the tank and/or obtain the liquid asphalt from Tank 109." Doc. Ent. 30-2.

However, in a letter of the same date, defense counsel disputed plaintiff's counsel's characterization. In so doing, defense counsel wrote:

> In the first place, we discussed Marathon paying for the heating and storing of the product contained in tank 109. Moreover, the product contained above the heal/bottom, according to the Terminaling Agreement, is owned by MMT not MPC. We insist that you abort any actions in regard to the product in tank 109 until we reach a satisfactory solution.

Doc. Ent. 30-3. Plaintiff's counsel wrote to defense counsel on April 23, 2010, April 28, 2010 and May 3, 2010. Doc. Ent. 30-4 at 2-5.

Judge Feikens has referred this case to me to conduct pretrial matters. Doc. Ent. 4. Currently before the Court is plaintiff's May 4, 2010 emergency motion to amend the stipulated third amended injunction (Doc. Ent. 28) and the amended stipulated order escrowing funds and appointing a receiver (Doc. Ent. 24). Doc. Ent. 30. Plaintiff argues that "MMT has violated the stipulated third amended injunction [Doc. Ent. 28] [,]" and "[t]his Court should enter an amended injunction to make clear that Marathon is permitted to sell its asphalt being stored by MMT." Doc. Ent. 30 at 17-19.

Defendants filed a response on May 11, 2010. Doc. Ent. 32. In an attached affidavit, Elizabeth C. Buc, Ph.D., P.E., stated it was her "expert opinion, using scientific and engineering principles, that the storage of acid inside a heated low-carbon steel storage tank will cause

corrosion and compromise the integrity of the storage tank. The acid inside Tank B was introduced knowingly by Marathon in the form of a poorly mixed PPA [polyphosphoric acid] modified product (PG 64-28) or the result of a reaction between the acid and asphalt over time." Doc. Ent. 32-3 at 1-6; Doc. Ent. 33-2 at 1-6. Defendants also attached a response brief, in which they conclude:

> The Court should hold Marathon accountable for its actions. While all agree the asphalt in Tank 109 should be sold and for its best price so that the proceeds are available for mitigation of damages purposes, MMT clearly has an interest in said asphalt, both in the most basic sense due to its statutory and/or common law warehouseman's lien for its storage and heating of the asphalt, if not due to the Terminaling Agreement, let alone due to the legal and/or equitable interest it has to same as a result of its overall damages that Marathon is responsible for.

Doc. Ent. 32-1 at 6.[3]

On May 13, 2010, plaintiff filed a reply. Doc. Ent. 34. Therein, plaintiff argues, "Marathon is entitled to attorney fees and costs[.]" Doc. Ent. 34 at 4-5. Plaintiff further argues that "[d]efendants' admissions conclusively establish that [MMT] is responsible for the loss." Doc. Ent. 34 at 5-6. Finally, plaintiff argues that it "is entitled to full proceeds from the sale[.]" Doc. Ent. 34 at 6-8.

**2.    Defendants' Midwest Marine and MMT's May 11, 2010 Motion to Amend (Doc. Ent. 33)**

---

[3]In addition to the affidavit (Doc. Ent. 32-3), attached to defendants' response are invoices from MMT for Lease on Tank 109 and Heating Charges (Doc. Ent. 32-4 at 1-6) and a chart titled MMT Partial Loss to Date totaling $42,234,872.04 (Doc. Ent. 32-5).

6

On the same day they filed their response, defendants Midwest Marine and MMT filed a motion to amend the stipulated third amended injunction (Doc. Ent. 28) and the amended stipulated order escrowing funds and appointing a receiver (Doc. Ent. 24). Doc. Ent. 33.[4]

On May 14, 2010, plaintiff filed a response. Doc. Ent. 35. Therein, plaintiff argues that "[t]he Court should strike the motion because it violates the Court rules[,]" Doc. Ent. 35 at 8-9, and "[t]he Court should sanction MMT for filing a frivolous motion[,]" Doc. Ent. 35 at 9, and "[t]he Court must deny the motion[.]" Doc. Ent. 35 at 9-12.

### 3. The May 14, 2010 Hearing

A hearing on plaintiff's emergency motion was noticed for May 14, 2010. Doc. Ent. 31. On the date set for hearing, attorneys Amy M. Johnston and Michael J. Connolly appeared in my courtroom. That same day, I entered an order (Doc. Ent. 36) granting in part plaintiff's emergency motion (Doc. Ent. 30) to amend the stipulated third amended injunction (Doc. Ent. 28) and the amended stipulated order escrowing funds and appointing a receiver (Doc. Ent. 24).

On May 20, 2010, defendants Midwest Marine and MMT filed a supplemental brief. Doc. Ent. 37.[5] The same day, plaintiff did the same. Doc. Ent. 38.

### E. Fed. R. Civ. P. 65

---

[4]In addition to the affidavit (Doc. Ent. 33-2), attached to defendants' motion are invoices from MMT for Lease on Tank 109 and Heating Charges (Doc. Ent. 33-3 at 1-6) and a chart titled MMT Partial Loss to Date totaling $42,234,872.04 (Doc. Ent. 33-4).

[5]Attached to the brief is the May 20, 2010 first supplemental affidavit of Elizabeth Buc, Ph.D., P.E. Doc. Ent. 37-2. Within this affidavit, Buc states that "Marathon knew or should have known that the addition of an acid like PPA to asphalt binder could result in acidic conditions inside a heated low carbon steel storage tank over time and cause corrosion. Tank B most likely failed prematurely and catastrophically as a direct result of Marathons PPA modified product." Doc. Net. 37-2 at 2 ¶ 20.

7

Fed. R. Civ. P. 65, which governs injunctions and restraining orders, provides in part that "[t]he court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). "In addressing a motion for a preliminary injunction, a court should consider: (1) the likelihood that the movant will succeed on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest will be advanced by issuing the injunction." *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009).

**F.     Analysis**

**1.     The parties' requests to amend the February 1, 2010 Amended Stipulated Order Escrowing Funds and Appointing a Receiver (Doc. Ent. 24) were granted in part by my May 14, 2010 order (Doc. Ent. 36).**

Each party seeks to amend the February 1, 2010 Amended Stipulated Order Escrowing Funds and Appointing a Receiver (Doc. Ent. 24). In its May 4, 2010 motion, plaintiff asks the Court to "modify the Amended [Stipulated] Order Escrowing Funds [and Appointing a Receiver] [Doc. Ent. 24] to exclude any sale of liquid asphalt products for which Marathon has not been paid[.]" Doc. Ent. 30 at 5.[6]

---

[6]In response, defendants request that plaintiff's motion be denied. Doc. Ent. 32 at 11 ¶ I. Alternatively, defendants request that the Court "[a]mend the Stipulated Order Escrowing Funds and Appointing a Receiver [Doc. Ent. 20] and the Amended Stipulated Order Escrowing Funds and Appointing Receiver [Doc. Ent. 24], only to exclude the proceeds from any sale of asphalt products in Tank 109, and then only to the extent necessary for the proceeds to be directly payable to MMT for the storage and heating of the asphalt in said Tank and for the expense of MMT's employees and/or its equipment to transfer the asphalt product to any purchaser of the said asphalt[.]" Doc. Ent. 32 at 11 ¶ IIA.

In their response brief, defendants request that the Court "amend [Doc. Entries] 20, and 24 only to provide for the proceeds from the asphalt in Tank 109 to be payable directly to MMT to the extent of the rent for said Tank and the heating of the asphalt therein (Exhibit 2), with any remaining proceeds payable directly into escrow. *See* MMT's proposed Fourth Amended Injunction, and proposed Third Amended Order Escrow[i]ng Funds and Appointing a Receiver attached hereto."

> In their May 11, 2010 motion, defendants Midwest Marine and MMT seek to:
>
> > . . . amend [Doc. Entries] 20, and 24 only to provide for the proceeds from the asphalt in Tank 109 to be payable directly to MMT to the extent of the rent for said Tank while said asphalt has been in the Tank, the heating of the asphalt therein, and the expense for MMT's employees and equipment to transfer any such asphalt sold to its purchaser, with any remaining proceeds payable into escrow. See MMT's proposed Fourth Amended Injunction, and proposed Second Amended Order Escrowing Funds and Appointing a Receiver attached hereto.

Doc. Ent. 33 at 6.

The substantive difference between the February 1, 2010 amended stipulated order escrowing funds and appointing a receiver (Doc. Ent. 24) and Marathon's May 4, 2010 proposed second amended stipulated order escrowing funds and appointing a receiver (Doc. Ent. 30-1 at 5-6) is the addition of the following language: "IT IS FURTHER ORDERED that, notwithstanding any terms to the contrary, this Order shall exclude the proceeds of any sale of liquid asphalt products by Marathon for which Marathon has not previously been paid, such that those funds may be payable directly to Marathon." Doc. Ent. 30-1 at 6.

The substantive difference between the February 1, 2010 amended stipulated order escrowing funds and appointing a receiver (Doc. Ent. 24) and defendants' May 20, 2010 proposed second amended order escrowing fund and appointing a receiver (Doc. Ent. 37-4 at 1-2) is to "exclude any proceeds of any sale of liquid asphalt product in Tank 109, and then only to the extent necessary for the proceeds to be directly payable to MMT for the rent of Tank 109 while the recovered asphalt product has been stored there and for the heating of said asphalt, as set forth in the attached invoices for same, and for the expense of using MMT's employees and equipment to transfer said asphalt product to any purchaser of same." Doc. Ent. 37-4 at 1-2.

---

Doc. Ent. 32-1 at 6-7.

9

My May 14, 2010 order sets forth conditions for the sale of the asphalt in Tank 109. Doc. Ent. 36. Therefore, the parties' motions are granted to the extent they sought to amend the February 1, 2010 order (Doc. Ent. 24) to sell the asphalt in Tank 109.

However, there remains the parties' requests to amend the February 1, 2010 order (Doc. Ent. 24) to allow for distribution from the proceeds of the sale. Upon consideration, the parties' May 4, 2010 and May 11, 2010 requests (Doc. Ent. 30 at 5, Doc. Ent. 33 at 6) to amend the February 1, 2010 order (Doc. Ent. 24) to allow for distribution from the proceeds of the sale are denied. For the reasons stated below in Section F.3 of this order, I conclude that the proceeds of any such sale shall remain in escrow.

**2.   My May 14, 2010 order addressed many of the parties' requests to amend the March 26, 2010 Stipulated Third Amended Injunction (Doc. Ent. 28).**

Each party seeks to amend the March 26, 2010 stipulated third amended injunction (Doc. Ent. 28). In its May 4, 2010 motion, plaintiff asks the Court to "amend the Stipulated Third Amended Injunction [Doc. Ent. 28] as reflected in the attached Proposed Fourth Amended Injunction[.]" Doc. Ent. 30 at 5; Doc. Ent. 30-1 at 2-4 (Proposed Fourth Amended Injunction).[7]

My May 14, 2010 order amended the Court's orders only to:

1. Order Defendants to prepare all liquid asphalt currently held in Tank 109 to a fully liquidized temperature and mechanically capable of removal and release to Marathon immediately thereafter;
2. Grant Marathon free and clear title to all of the asphalt held in Tank 109;
3. Grant Marathon the authority to sell that asphalt without Defendants' approval, authorization, or conditions, and that any proceeds received be placed into escrow; and

---

[7]Defendants respond that the Court "should amend [Doc. Entries] 13, 23 and 28 only to provide for the sale of the asphalt in Tank 109[.]" Doc. Ent. 32-1 at 6-7.

> 4. Grant Marathon and any prospective purchasers access to MMT's premises to evaluate the asphalt, analyze the manner of transfer from the tank, and/or obtain and remove the liquid asphalt from tank 109.

Doc. Ent. 36 at 1-2.[8]

Therefore, plaintiff's only remaining requests to amend set forth in its motion or its proposed order concern "[o]rders that all proceeds received from any sale are directly payable to Marathon;" and "[g]rant[ing] Marathon costs and attorney fees incurred in bringing this Motion." Doc. Ent. 30 at 5-6; Doc. Ent. 30-1 at 3-4.[9]

In their May 11, 2010 motion, MMT "respectfully requests that this Court amend [Doc. Entries] 13, 23 and 28 only to provide for sale of the asphalt in Tank 109[.]" Doc. Ent. 33 at 6. Here, too, some of the amendments sought by defendants' May 20, 2010 proposed fourth amended injunction (Doc. Ent. 37-3 at 1-3)[10] were addressed by my May 14, 2010 order. However, as is the case with plaintiff's motion, defendants seek the addition of language "subject to MMT's lien to be paid from the proceeds of the sale of said asphalt as provided below[,]" and "[r]equire that any proceeds received in any manner whatsoever from the asphalt

---

[8]Many of the amendments sought by plaintiff's May 4, 2010 proposed fourth amended injunction (Doc. Ent. 30-1 at 2-4) were addressed by my May 14, 2010 order (Doc. Ent. 36). *Compare* Doc. Ent. 30-1 at 3 ¶¶ 1-4 with Doc. Ent. 36 at 2 ¶¶ 1-4.

[9]Plaintiff's May 4, 2010 proposed amended injunction (Doc. Ent. 30-1 at 2-4) plaintiff also seeks "costs and fees incurred by Marathon in bringing its Emergency Motion to Enforce and/or Amend the Stipulated Third Amended Injunction." Doc. Ent. 30-1 at 4.

[10]Defendants provided this Court with a proposed Fourth Amended Injunction on May 14, 2010; however, this order assumes the May 20, 2010 proposed Fourth Amended Injunction supercedes the previous version.

product in Tank 109 be first payable directly to MMT to offset MMT's costs and expenses[.]" Doc. Ent. 37-3 at 2.[11]

3.    **The parties' requests for distribution from the proceeds of the sale are denied.**

Working from the latest-filed briefs, each of the parties essentially seeks to amend the portion of my May 14, 2010 order providing that "any proceeds received be placed into escrow[.]" Doc. Ent. 36 at 2 ¶ 3. For example, Marathon contends it "has an equitable lien on the asphalt that was recovered and placed on top of the heel[,]" Doc. Ent. 38 at 6, and it seeks the addition of language providing that "notwithstanding any terms to the contrary, this Order shall exclude the proceeds of any sale of liquid asphalt products by Marathon for which Marathon has not previously been paid, such that those funds may be payable directly to Marathon." Doc. Ent. 38 at 11-12.

Conversely, defendants contend that "[t]he Court should hold Marathon accountable for its actions and enter an amended injunction recognizing that Marathon has free and clear title to all of the asphalt held in Tank 109 subject to MMT's lien to be paid from the proceeds of the sale of said asphalt, . . . requiring that any proceeds received in any manner for said asphalt be first payable directly to MMT for the rent of Tank 109 since said asphalt has been in said tank and the heating of said asphalt and the expense of using MMT's employees and equipment to transfer the

---

[11]There is a paragraph in the March 26, 2010 order regarding preserving and maintaining the remaining asphalt (Doc. Ent. 28 at 3) which differs slightly from similar paragraphs proposed by plaintiff (Doc. Ent. 30-1 at 3) and defendants (Doc. Ent. 37-3 at 3). For example, plaintiff's proposed paragraph adds "express, written directions from Marathon indicating otherwise[,]" and defendants' proposed paragraph omits "109". This order assumes that the precise language of this paragraph was not at issue.

asphalt to any purchaser of same with remaining proceeds paid into escrow[.]" Doc. Ent. 37 at 24.[12]

Consistent with my foregoing rulings, the parties' May 20, 2010 requests to amend my May 14, 2010 order - specifically the requirement in my May 14, 2010 order that proceeds from the sale of asphalt held in Tank 109 to be placed into escrow (Doc. Ent. 36 at 2 ¶ 3) - are denied.

I do acknowledge plaintiff's arguments that "MMT is not entitled to any proceeds from a sale[,]" Doc. Ent. 38 at 5-9, and "MMT's affidavit is baseless and controverted by MMT's binding admission s of liability[,]" Doc. Ent. 38 at 9-11, as well as defendants' arguments that it should be compensated for rent, heat and expenses, Doc. Ent. 37 at 24.

However, I reach this decision, because I conclude that determining the parties' entitlement to compensation for the items regarding which they seek immediate reimbursement - such as plaintiff's assertion that "[a]s Marathon owned the heel and has an equitable interest in the remainder, Marathon has a 100% interest in the proceeds of the sale of all the asphalt in Tank 109[,]" (Doc. Ent. 38 at 6) and defendants' requests for rent, heating expense and transfer expense (Doc. Ent. 37-3 at 2-3) - is an issue that goes to the merits of the parties' claims and an assessment of damages and, therefore, is more appropriately determined through a dispositive motion or a trial.

**4.      I defer ruling upon the parties' requests for costs, fees and/or sanctions.**

Throughout the motion papers, the parties make requests for costs (*see, i.e.*, Doc. Entries 30 at 5-6, 30-1 at 4, 34 at 4-5, 37 at 24, 38 at 11) and/or fees (*see, i.e.*, Doc. Entries 30 at 5-6, 37

---

[12]The invoices attached to defendants' May 20, 2010 supplemental brief total $415,833.29. Doc. Ent. 37-5.

at 6 & 24, 38 at 11) and/or sanctions (*see, i.e.*, Doc. Entries 35 at 9, 37 at 24, 38 at 3 & 7). I note that on June 1, 2010, Marathon filed an emergency motion to hold defendant in contempt of court. Doc. Ent. 40. Plaintiff specifically alleges that "[d]efendants are clearly in contempt of the express language of the May 14, 2010 Order and its spirit and intent." Doc. Ent. 40 at 5 ¶ 15.

In light of plaintiff's pending June 1, 2010 emergency motion to hold defendant in contempt of Court (Doc. Ent. 40), I will defer ruling upon the parties requests for costs and/or fees and/or sanctions.

## II. Order

In accordance with the Court's May 14, 2010 order (Doc. Ent. 36) and the foregoing opinion, **plaintiff's May 4, 2010 emergency motion (Doc. Ent. 30)** to amend the stipulated third amended injunction (Doc. Ent. 28) and the amended stipulated order escrowing funds and appointing a receiver (Doc. Ent. 24) **is GRANTED IN PART and DENIED IN PART**. Likewise, **defendants Midwest Marine and MMT's May 11, 2010 motion (Doc. Ent. 33)** to amend the stipulated third amended injunction (Doc. Ent. 28) **is GRANTED IN PART and DENIED IN PART**.

IT IS SO ORDERED.

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

Dated: 6/10/10

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on June 10, 2010.

                                <u>s/Eddrey Butts</u>
                                Case Manager