UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARATHON PETROLEUM
COMPANY, L.L.C.,

                    Plaintiffs,

v.

MIDWEST MARINE, INC., et al.,

                    Defendants,

_____/

CASE NO. 2:09-CV-13804
JUDGE JOHN FEIKENS
MAGISTRATE JUDGE PAUL J. KOMIVES

**REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S EMERGENCY
MOTION TO HOLD DEFENDANT IN CONTEMPT OF COURT (Doc. Ent. 40)**

**I.**    **RECOMMENDATION:**  The Court should deny plaintiff's emergency motion to hold

defendant in contempt of court (Doc. Ent. 40).

**II.**    **REPORT:**

**A.**    **This case concerns the May 21, 2009 rupture of a tank.**

Michigan Marine Terminal, Inc. ("MMT"), and Marathon Petroleum Company, L.L.C.

("Marathon"), entered into a Asphalt Terminaling Agreement, effective March 1, 2006, Doc.

Ent. 1-3 at 1-16. The agreement was amended on March 5, 2006 and February 15, 2007. Doc.

Ent. 1-3 at 17, 18-20. Section 3.1 of the agreement provides that MMT "shall provide and

maintain [certain] Facilities at the Terminal for performing the Services[.]" Doc. Ent. 1-3 at 2 ¶

3.1.

Pursuant to the agreement, MMT was to "[p]rovide all heating necessary to maintain the

temperature of Products delivered by MPC . . . at a minimum of 250°F and a maximum of

300°F." Doc. Ent. 1-3 ¶ 4.1c. Section 5 of the agreement set forth provisions for compensation. Doc. Ent. 1-3 ¶¶ 5.1-5.4.

The agreement further provided that "MMT shall be responsible for any contamination or loss of the Product which results from MMT's failure to comply with the terms of this Agreement, or the negligence, recklessness, or intentional misconduct of MMT, its agents, contractors, or customers[.] MMT shall be deemed to have taken title to the affected Product upon the occurrence of any loss or contamination for which it is responsible, and shall pay MPC, within 15 days after the occurrence, for the value of such Product based on MPC's posted Detroit Rack price for such Product as of the date of occurrence." Doc. Ent. 1-3 ¶ 8.3a. The agreement also provides that "[t]o the extent that the Incident is caused by or arises from the negligence or willful misconduct of MPC, then the cost of such Response . . . shall be borne by MPC, and MPC shall defend, indemnify and hold harmless MMT from all third-party and government claims arising out of the Incident[.] However, MPC's indemnity obligations shall not extend to those claims arising from any negligence, or willful misconduct, on the part of the MMT, its employees, agents, or contractors in performing the Response." Doc. Ent. 1-3 ¶ 8.7a.[1]

Marathon alleges that on May 21, 2009, "a tank designated as Tank 'B' ruptured and spilled in excess of 12,758.20 tons of liquid asphalt into the surrounding concrete containment dikes at the Facilities ('the spill')." Doc. Ent. 1 ¶ 21. "The spill prevented the transfer and proper storage of 1,637.9 tons of liquid asphalt in tanks designated as Tanks 'A,' 'C' and '109.'" It has been "represented that this liquid asphalt is recoverable and not lost." Doc. Ent. 1 ¶ 24.

---

[1]The agreement also contains provisions regarding indemnity. Doc. Ent. 1-3 ¶¶ 11.1-11.3.

Marathon further alleges that "[t]itle to the liquid asphalt that was the subject of the spill passed to Defendants on May 21, 2009." Doc. Ent. 1 ¶ 30. It is Marathon's position that "[d]efendants failure to compensate Marathon for the contaminated and lost product due to the spill is a default of Defendants' obligations under [Section 10.2 of] the Agreement." Doc. Ent. 1 ¶ 39. On June 5, 2009, Marathon "sent formal communication to Defendants notifying of the default of the Agreement." Doc. Ent 1 ¶ 40; Doc. Ent. 1-4 at 1-2.

**B.     The complaints in this case were filed on September 25, 2009, October 26, 2009 and January 6, 2010.**

Marathon filed this lawsuit on September 25, 2009 against defendants Midwest Marine, Inc., MMT, Walter S. Cytacki, Alfred Cytacki and Alicia Cytacki Krall. Doc. Ent. 1 ¶¶ 2-6. The causes of action include (I) breach of contract asphalt terminaling agreement (¶¶ 43-48); (II) unjust enrichment/quantum meruit (¶¶ 49-63), (III) promissory estoppel (¶¶ 64-72); (IV) liability of Walter Cytacki, Alfred Cytacki and Alicia Cytacki Krall (¶¶ 73-89); and (V) warehouseman's liability (¶¶ 90-98).[2]

On October 26, 2009, defendants filed an answer to the complaint. Doc. Ent. 9. On the same day, defendants Midwest Marine and MMT filed a verified counter complaint. Doc. Ent. 11. The counter claims are (1) assumpsit / breach of contract (¶¶ 14-20); (2) negligent and willful misconduct of Marathon (¶¶ 21-38); (3) account stated (¶¶ 39-43); (4) quantum meruit and/or unjust enrichment (¶¶ 44-46); (5) breach of implied contract (¶¶ 47-51); and (6) promissory estoppel (¶¶ 52-56). On November 13, 2009, plaintiff filed an answer to the counter complaint. Doc. Ent. 14.

---

[2]Within this cause of action, plaintiff cites Mich. Comp. Laws §§ 440.7102 and 440.7204(1). Doc. Ent. 1 at 12-13 ¶¶ 94, 95, 97.

On January 5, 2010, I entered a stipulated order regarding the first amended complaint. Doc. Ent. 19. On January 6, 2010, plaintiff filed a first amended complaint against the same defendants. Doc. Ent. 21 ¶¶ 2-6. The causes of action include (I) breach of contract asphalt terminaling agreement (¶¶ 49-54); (II) unjust enrichment/quantum meruit (¶¶ 55-70), (III) promissory estoppel (¶¶ 71-79); (IV) liability of Walter Cytacki, Alfred Cytacki and Alicia Cytacki Krall (¶¶ 80-96); and (V) warehouseman's liability (¶¶ 97-106), as well as the additional cause of action (VI) conversion (¶¶ 107-118). On January 25, 2010, defendants filed an answer to the first amended complaint. Doc. Ent. 22.

## C. Several orders have been entered to escrow funds, appoint a receiver and define injunctions.

On October 2, 2009, plaintiff filed an emergency motion for temporary restraining order and preliminary injunction. Doc. Ent. 5. However, on October 27, 2009, Judge Feikens entered a stipulated order regarding this motion. Doc. Ent. 13.

On January 5, 2010, I entered a stipulated order escrowing funds and appointing a receiver. Doc. Ent. 20. On January 28, 2010, I entered an amended stipulated order regarding preliminary injunction. Doc. Ent. 23.[3]

---

[3]Citing MMT records of asphalt product in its storage tanks (Doc. Ent. 42-2), defendants claim that "although asphalt product that had been remediated prior to the Fire was transferred between the other storage tanks after the fire, no further remediation of the spilled product that hadn't yet been remediated as of the Fire has ben attempted since the Fire." Doc. Ent. 42 at 3 ¶ 3. According to defendants, MMT's request "to remove/excavate the remaining asphalt in the dikes . . . . so the site could eventually be cleaned up enough so that MMT could start conducting business with that part of its facility," lead to the Court's January 28, 2010 amended stipulated order regarding preliminary injunction (Doc. Ent. 23). Doc. Ent. 42 at 3 ¶ 3. *See also* Doc. Ent. 40-1 at 6.

On February 1, 2010, I entered an amended stipulated order escrowing funds and appointing a receiver.  Doc. Ent. 24.  On March 26, 2010, Judge Feikens entered a stipulated third amended injunction.  Doc. Ent. 28.

**D.    On May 14, 2010 I conducted a hearing and entered an order regarding plaintiff's May 4, 2010 emergency motion to amend and defendants' May 11, 2010 motion to amend.**

During the May 14, 2010 hearing, defense counsel stated: ". . . we're asking for $282,890.40. Plus there was an additional twenty-five –- $7,000 to retrofit tank 109 so the product can be sold and transported.  We're asking the Court in our proposed order to give us that 309,000 plus expenses for the transport –- you know, manpower, et cetera, to get the liquid asphalt transported."  Doc. Ent. 43 at 17.  Furthermore, defense counsel stated that there would "be an additional month for May and there will be additional expenses. I know there's an expense which I just found out about in the last couple of days that Marathon found out about for 27,000 that is not in our papers."  Doc. Ent. 43 at 20.  Also, defense counsel stated, "there will be the –- the month of May and an additional 27,000 plus the cost of the employees and transporting and the work that they'll have to do to get the product to the –- to the buyer."  Doc. Ent. 43 at 21.

On May 14, 2010, I entered an order granting in part plaintiff's emergency motion to amend the third amended injunction and amended order escrowing funds (Doc. Ent. 30).  Doc. Ent. 36.  My order specifically provided that "the Orders of Temporary Restraining Order and Preliminary Injunction (Doc. Ent. 13), Amended Preliminary Injunction (Doc. Ent. 23) and Stipulated Third Amended Injunction (Doc. Ent. 28) are amended only to:

> 1. Order Defendants to prepare all liquid asphalt currently held in Tank 109 to a fully liquidized temperature and ***mechanically***

5

*capable* of removal and release to Marathon immediately
thereafter;

2. Grant Marathon free and clear title to all of the asphalt held in
Tank 109;

3. Grant Marathon the authority to sell that asphalt without
Defendants' approval, authorization, or conditions, and that any
proceeds received be placed into escrow; and

4. Grant Marathon and any prospective purchasers access to
MMT's premises to evaluate the asphalt, analyze the manner of
transfer from the tank, and/or obtain and remove the liquid asphalt
from tank 109.

Doc. Ent. 36 at 1-2 (emphasis added).

On June 10, 2010, I entered an opinion and order granting in part and denying in part the

parties' motions to amend (Doc. Entries 30 and 33) the stipulated third amended injunction (Doc.

Ent. 28) and the amended stipulated order escrowing funds and appointing a receiver (Doc. Ent.

24). Doc. Ent. 41. On June 28, 2010, I entered a stipulated fourth amended injunction. Doc.

Ent. 47.

**E.     Plaintiff's June 1, 2010 emergency motion to hold defendant in contempt of Court
should be denied.**[4]

---

[4]As noted during the June 30, 2010 oral argument, my conclusions come in the form of a
report and recommendation, as a U.S. Magistrate Judge does not have contempt power. "The
prevailing view is that a magistrate judge lacks the power to adjudicate contempt proceedings;
pursuant to 28 U.S.C. § 636(e), a magistrate may only certify to the district court (or deny
certification of) facts possibly constituting contempt." *Castaneda v. Falcon*, 166 F.3d 799, 801 (5th
Cir. 1999). *See also Bingman v. Ward*, 100 F.3d 653, 657 (9th Cir. 1996) ("when we upheld the
power of a magistrate judge to impose discovery sanctions, we also opined that § 636(e), 'which
governs the jurisdiction and powers of magistrates, requires a magistrate to refer contempt charges
to a district court judge.'") (quoting *Grimes v. City & County of San Francisco*, 951 F.2d 236, 240
(9th Cir.1991)).

Currently before the Court is plaintiff's June 1, 2010 emergency motion to hold

defendant in contempt of Court (Doc. Ent. 40) for failure to comply with the Court's May 14,

2010 order (Doc. Ent. 36). Defendants filed a response on June 14, 2010. Doc. Ent. 42.

A hearing on this motion was originally noticed for June 21, 2010. Doc. Ent. 45.

However, the hearing was renoticed for June 30, 2010. Doc. Ent. 46. On the date set for

hearing, attorneys Amy M. Johnston and Michael J. Connolly appeared.

**1.      The events of May 21, 2010 through July 1, 2010.**

In a letter dated May 21, 2010, plaintiff's counsel wrote to defense counsel, stating in

part that "MMT will not make the modifications to the tank line and loading arm necessary to

remove the product from Tank 109[,]" and "MMT also will not pay for the temporary weight

scale that is needed to comply with MDOT [Michigan Department of Transportation]

requirements now that the product must be removed via truck[.]" Doc. Ent. 40-3.[5] According to

plaintiff's counsel, "Defendants did not respond in writing to Marathon's correspondence."

Instead, counsel claims, defense counsel "contacted [her] and advised that no action would be

undertaken by Defendants at this time. It was Defendants['] position that if additional

engineering was required to extract the product from Tank 109 that it was Marathon's obligation

to do so, irrespective of the Court's Order." Doc. Ent. 40-1 at 11 n.3.

---

[5]Attached to plaintiff's motion are MDOT Maximum Legal Truck Loadings and Dimensions. Doc. Ent. 40-5. Citing Mich. Comp. Laws § 290.631, plaintiff contends that "[f]ailure to comply with weight requirements may result in civil and criminal penalties[,]" and "[d]efendants['] refusal to perform the required modifications renders the product in Tank 109 incapable of leaving MMT's facility[.]" Doc. Ent. 40-1 at 12.

On the other hand, defendants claim "[t]here is no requirement for a storage operator, such as MMT to have such scales under the law, and Marathon cites no specific authority to the contrary. Rather, the burden is on the driver of a truck to make sure his truck complies with the state law, it is not the storage facility's responsibility." Doc. Ent. 42 at 6 ¶ 11.

On May 21, 2010 at 5:59 p.m., MMT's Terminal Manager Curt Robinson electronically mailed Tracie D. McCall of Marathon Oil regarding their same-day conversation, wherein Robinson stated that "MMT will work diligently toward completion if authorized to install a top loading system. If Marathon would authorize MMT to put in the infrastructure to top load a tank truck for said fee(s) this process would take approximately two (2) weeks or less to complete." Doc. Ent. 40-4. On May 21, 2010, at 8:12 p.m., McCall sent an electronic mail to Robinson regarding Tank 109, stating that "[i]f top loading and truck weighing capabilities are not available for approximately two weeks, continuing to heat product when it cannot be sold will only unnecessarily increase MMT's heating expense." The letter also stated that Marathon's counsel "has attempted to contact Mr. Connolly this afternoon to share that Marathon is prepared to offer $40,000 to facilitate the changes needed on your end to safely load and transport the product, but only in exchange for all proceeds from the sale." Doc. Ent. 42-4 at 2.

On May 26, 2010, counsel for the parties spoke. Plaintiff's counsel sent a letter to defense counsel confirming that plaintiff would refrain from filing the instant motion until defense counsel's return from Paris and noting that defense counsel would be back in the office on June 1, 2010. Doc. Ent. 40-6. On May 26, 2010 at 1:35 p.m., John K. Maguire, General Attorney Marathon Oil Company, electronically mailed plaintiff's counsel stating, "please feel free to contact me directly as you have in the past if you feel that this is necessary." Doc. Ent. 42-7 at 2.

On May 27, 2010, defendants' counsel (Michael J. Connolly) sent a letter to plaintiff's counsel (Amy M. Johnston) stating that he was in Paris and would be back in the office on June 2, 2010 or June 3, 2010. Doc. Ent. 42-5 at 2. On May 27, 2010 at 9:54 a.m., McCall sent a

message to Robinson requesting "5 more one gallon samples[.]" At 10:12 a.m., Robinson replied

that, "per our attorney he needs letters from [Maguire] and [Johnston] authorizing him to speak

with [Maguire]" and further stated, "any questions call [Connolly]." Doc. Ent. 40-7.

That same day, plaintiff's counsel wrote a letter to defense counsel confirming their

same-day telephone conference during which defense counsel allegedly "stated that [plaintiff's

representatives] would not be able to obtain samples of the material presently contained in Tank

109 despite the Court's Order (ECF 36) that specifically grants Marathon the ability to evaluate

the asphalt and obtain samples of the same." *See* Doc. Ent. 40 at 4 ¶ 13, Doc. Ent. 40-8

(05/27/10 letter). Plaintiff's counsel also wrote, "[y]our position that you will not allow samples,

access to the facility or communication between representatives of Marathon and Midwest

Marine, Inc. unless [plaintiff's counsel] provide[s] [defense counsel] with written authorization

that [he] may contact [plaintiff] directly is absurd and in flagrant violation oft he Court Order."

Doc. Ent. 40-8.

On June 3, 2010 at 4:30 p.m., Robinson electronically mailed defense counsel, with an

attachment. Doc. Ent. 42-4 at 2. Notes dated June 7, 2010, apparently addressed to defense

counsel, allege that "McCall/Marathon has known that MMT did not have a truck loading station

for them and that MMT did not have a truck scale." Doc. Ent. 42-3 at 8. On June 14, 2010 at

1:25 p.m., defense counsel electronically mailed plaintiff's counsel defendants' proposed motion

for sanctions. Doc. Ent. 42-8 at 2-35.

During the June 30, 2010 oral argument, defense counsel represented that Tank 109

would be empty by Thursday, July 1, 2010.

**2.      Only Paragraphs 1, 3, 5 & 6 of plaintiff's requests for relief set forth in its June 1, 2010 motion, are still at issue.**

During the June 30, 2010 oral argument, plaintiff's counsel informed the Court that only certain of the requests for relief sought in its June 1, 2010 emergency motion were still at issue, including plaintiff's requests that the Court (1) find defendants in contempt of Court for the failure to comply with my May 14, 2010 order (Doc. Ent. 36), Doc. Ent. 40 at 5 ¶ 1; (2) direct defendants to continue to "make whatever other modifications may be necessary to safely and properly extract the liquid asphalt produce from Tank 109 and transport the same off the premises of MMT;" Doc. Ent. 40 at 5 ¶ 2c; (3) direct defendants to "[a]ssist in whatever means necessary to facilitate the removal of the product contained in Tank 109[;]" Doc. Ent. 40 at 6 ¶ 2e; (4) require defendants to "pay all expenses for all modifications necessary to safely remove the product from Tank 109 and enable that product to be transported from Defendant's facility;" Doc. Ent. 40 at 6 ¶ 3; (5) require defendants to "provide this Court with the status of their progress in this regard within five (5) days of the date of this Order and every five (5) days thereafter until completion;" Doc. Ent. 40 at 6 ¶ 4; (6) require defendants to "pay Marathon costs and attorney fees incurred in bringing this motion in the amount of $7,500.00;" Doc. Ent. 40 at 6 ¶ 5; and (7) require defendants to:

> . . . pay Marathon for any diminution in value of the sale of the liquid asphalt product in Tank 109 caused by Defendants' delay in rendering the product capable of removal, based on posted market prices from the asphalt Market Reports as of May 24, 2010 compared to market prices on the date the product is capable of removal and transport from Defendant's facility[.]

Doc. Ent. 40 at 6 ¶ 6. *See also* Doc. Ent. 40-2 at 2-4 (Plaintiff's proposed contempt order).

Furthermore, assuming that Tank 109 is empty by the close of business on July 1, 2010, it appears that only plaintiff's requests for relief in Paragraphs 1, 3, 5 & 6 will be at issue. Based upon defense counsel's June 30, 2010 representation that no one wants this product out of Tank

109 more than defendants, this report and recommendation assumes that defendants will not resist making "whatever other modifications may be necessary to . . . transport the [product] off the premises of MMT[.]" Doc. Ent. 40 at 5 ¶ 2c. Likewise, it does not appear that any ruling will be necessary on defendants' request for relief ¶ II set forth in its June 14, 2010 response. Doc. Ent. 42 at 8 ¶ II.

**3.      Plaintiff's June 1, 2010 motion should not be denied on the basis that counsel did not seek concurrence in accordance with E.D. Mich. LR 7.1(a).**

E.D. Mich. LR 7.1(a), which governs seeking concurrence in motions and requests, states:

> (1)   The movant must ascertain whether the contemplated motion, or request under Federal Rule of Civil Procedure 6(b)(1)(A), will be opposed. If the movant obtains concurrence, the parties or other persons involved may make the subject matter of the contemplated motion or request a matter of record by stipulated order.

> (2)   If concurrence is not obtained, the motion or request must state:

>> (A)   there was a conference between attorneys or unrepresented parties and other persons entitled to be heard on the motion in which the movant explained the nature of the motion or request and its legal basis and requested but did not obtain concurrence in the relief sought; or

>> (B)   despite reasonable efforts specified in the motion or request, the movant was unable to conduct a conference.

> (3)   The court may tax costs for unreasonable withholding of consent.

E.D. Mich. LR 7.1(a).

Plaintiff's counsel's May 21, 2010 letter mentions E.D. Mich. LR 7.1 (Doc. Ent. 40-3), and her May 26, 2010 (Doc. Ent. 40-6) and May 27, 2010 (Doc. Ent. 40-8) letters describe conversations between counsel for the parties. In its June 1, 2010 motion, plaintiff states that

"on May 21, 26, and 27, 2010, counsel for Marathon discussed the current motion with Defendants' counsel, its legal basis and the relief requested, but did not obtain concurrence in the relief sought." Doc. Ent. 40 at 5 ¶ 16.

Upon consideration, the Court should conclude that denial of plaintiff's June 1, 2010 motion on the basis that plaintiff's counsel's aforementioned attempts at concurrence do not satisfy E.D. Mich. LR 7.1 is not warranted. To be sure, defense counsel's letter of May 27, 2010 - which was allegedly transmitted by electronic mail - informs plaintiff's counsel that defense counsel would not be returning until late on June 1, 2010 and would be back in the office on June 2nd or 3rd, at which time he would talk to plaintiff's counsel. Doc. Ent. 42-5. Therefore, while plaintiff's filing of the instant motion on the afternoon of June 1st is not inconsistent with its May 26, 2010 correspondence, which represents that "Marathon will refrain from filing its motion until Tuesday, June 1, 2010[,]" there seems to be merit to defense counsel's June 14, 2010 argument that:

> Despite being informed orally and in writing that MMT's counsel would discuss Marathon's counsel's proposed motion with her when he was back in his offices on June 2nd or 3rd (in other words he had not refused to concur with her motion, it simply hadn't gotten to that point yet and he would be able to discuss it with her only when he was back in his office), she went ahead and filed her motion on June 1, 2010 in effect without seeking concurrence in violation of L.R. 7.1(a)(1) and (2).

Doc. Ent. 42 at 7 ¶ 12.[6]  In sum, notwithstanding plaintiff's counsel's May 26, 2010 statements

that (1) "Marathon will not agree to any delay in the hearing on the basis that you require

additional time to respond as you were aware of this issue prior to your departure as evidenced

by the May 21, 2010 correspondence[,]" or (2) "you advised me that another attorney in your

office, Phil Holman, was able to assist on this matter during the time that you were on

vacation[,]" Doc. Ent. 40-6 at 2, it does not appear that attorney Connolly was reasonably

available on May 26, 2010.

Still, it appears that plaintiff's counsel was acting on a good faith belief that "time was of

the essence[.]"  In fact, in her May 26, 2010 letter she stated, "[a]s you know, we need this

resolved immediately so that the product may be sold."  Doc. Ent. 40-6.  This is also reflected in

plaintiff's June 1, 2010 motion.  Doc. Ent. 40 at 4 ¶ 12 ("Marathon reluctantly agreed [to refrain

from filing the instant Motion until defense counsel's return] as time continues to be of the

essence and specifically indicated that it could not concur to any delay in hearing this matter.").

4.    **At this time, the Court should not hold defendants' in contempt of Court (¶ 1).
Furthermore, plaintiff should not be awarded expenses for modifications (¶ 3), or
$7,500.00 in attorney fees and costs (¶ 5) or an award representing the product's
diminution in value (¶ 6).**

---

[6]According to the defense, "[t]here has been a history of difficulties between Marathon's
counsel and MMT's counsel, with Marathon's counsel continually sending self serving
correspondence to MMT's counsel misrepresenting that there was/were (an) agreement(s) between
them when there wasn't/weren't, and/or misrepresenting the specifics of any actual agreement(s),
which course of conduct on Marathon's counsel's part lead to MMT's counsel informing Marathon's
counsel that she was never to assume there was any agreement between them unless it was signed
by both sides."  Doc. Ent. 42 at 7 ¶ 12; Doc. Ent. 42-6 (April 21, 2010 & May 3, 2010 letters from
defense counsel to plaintiff's counsel).

**a.** Plaintiff requests that the Court find "[d]efendants . . . in contempt of Court for failing to comply with the May 14, 2010 Order[.]" Doc. Ent. 40 at 5 ¶ 1. By comparison, defendants seek a ruling that defendants have "complied with [the May 14, 2010 order][.]" Doc. Ent. 42 at 8 ¶ I.

**b.** Plaintiff's request that defendants be "required to pay all expenses for all modifications necessary to safely remove the product from Tank 109 and enable that product to be transported from Defendant's facility[,]" Doc. Ent. 40 at 6 ¶ 3, should be denied.

Plaintiff contends that "modifications to the tank line, pump motor, loading arm and other equipment necessary to safely remove the very hot liquid asphalt product from Tank 109 [are] necessary because equipment for removal of the product by means other than truck loading had been damaged in an earlier fire Marathon had nothing to do with - and would not install the temporary weight scale needed to comply with MDOT truck requirements, which was also necessary only due to the fire." Doc. Ent. 40-1 at 8. Elsewhere, plaintiff contends, "it is *entirely* fair and reasonable to make Defendants bear [the modification] expenses–the only reasons the modifications or weight scale are necessary is because of an October 2009 fire at MMT's facilities *that Marathon undisputedly had nothing to do with* that damaged MMT's equipment." Doc. Ent. 40-1 at 12.

However, the parties dispute responsibility for the May 21, 2009 tank rupture. Relying upon the May 11, 2010 affidavit of Elizabeth Buc, Ph.D., P.E. (Doc. Entries 32-3 at 1-6, 33-2 at 1-6),[7] defendants contend that Marathon "is solely responsible for the corrosion to Tank B which lead to said Tank's rupture and the spill of its asphalt contents[,]" Doc. Ent. 42 at 16, and "[i]t is

---

[7]Defendants have also filed a May 20, 2010 first supplemental affidavit of Elizabeth Buc, Ph.D., P.E. (Doc. Ent. 37-2).

therefore Marathon's actions, not MMT's, which are a causal link to the Fire which started during the ongoing remediation process, which process would not have been necessary had not Marathon been responsible for the rupture of Tank B and the spill of its contents in the first place, which fire lead to the damage of MMT's equipment such that the asphalt in Tank 109 cannot now be transferred out of it and in to a barge but can only be transferred out of it and into a Tanker Truck[,]" Doc. Ent. 42 at 18.

This ruling is consistent with my June 10, 2010 conclusion that "determining the parties' entitlement to compensation for the items regarding which they seek immediate reimbursement . . . is an issue that goes to the merits of the parties' claims and an assessment of damages and, therefore, is more appropriately determined through a dispositive motion or a trial." Doc. Ent. 41 at 13.  In other words, Paragraph 3 of plaintiff's June 1, 2010 prayer for relief is more appropriately determined through a dispositive motion or a trial.

**c.**     Plaintiff also requests entry of an order requiring defendants to "pay Marathon costs and attorney fees incurred in bringing this motion in the amount of $7,500.00[,]" Doc. Ent. 40 at 6 ¶ 5.  Although there are several bases on which a party can base its request for sanctions, such as Fed. R. Civ. P. 11(c) ("Sanctions.), Fed. R. Civ. P. 37(b) ("Failure to Comply with a Court Order."), 28 U.S.C. § 1927 ("Counsel's liability for excessive costs"), it is clear that plaintiff's request here is based upon the Court's inherent power to sanction.  *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 831 (1994) ("Courts . . . have embraced an inherent contempt authority . . . as a power necessary to the exercise of all others[.]") (quotations and citations omitted).

I arrive at this conclusion, based upon plaintiff's reference to *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987), wherein the Supreme Court stated, "'[i]f a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls 'the judicial power of the United States' would be a mere mockery.'" *Young*, 481 U.S. at 796 (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911)).[8]

As plaintiff points out, "[a] court has broad discretion in fashioning a contempt sanction." *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.3d 1529, 1536 n.8 (11th Cir. 1986). "In seeking to have the district court hold the [defendants] in civil contempt, [plaintiff has] the burden of establishing by clear and convincing evidence that the [defendants] "'violated a definite and specific order of the court requiring [them] to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (quoting *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987)).

There is not clear and convincing evidence that defendants delayed their compliance with the May 14, 2010 order of this Court. **First, there are the alleged events of May 21, 2010.** For example, plaintiff asserts that on May 21, 2010, "[d]efendants informed Marathon that they would *not* modify the tanks lines, pump motor, loading arm and other equipment for Tank 109,

---

[8]I note plaintiff's reference to *Intercept Sec. Corp. v. Code-Alarm, Inc.*, 169 F.R.D. 318 (E.D. Mich. 1996), wherein Judge Gadola stated, "[t]he court has broad discretion to order one or more 'just' sanctions as provided for in Rule 37, and thus, can tailor the imposition of sanctions to the facts of a particular case." *Intercept Sec. Corp.*, 169 F.R.D. at 321 (citations omitted). However, the May 14, 2010 order of this Court, regarding which plaintiff challenges defendants' compliance, was not a discovery order.

or install a temporary weight scale in order to render the product in Tank 109 capable of removal." Doc. Ent. 40 at 4 ¶ 11. In other words, plaintiff alleges, "[o]ne week after entry of the Order, on May 21, 2010 Defendants informed Marathon that they would not make necessary modifications to MMT's facility in order to render the product in Tank 109 capable of removal in a safe manner, unless Marathon paid for the same." Doc. Ent. 40-1 (Motion Brief) at 6.

The impetus for this argument appears to have been the 5:59 p.m. May 21, 2010 electronic mail from Robinson of MMT to McCall of Marathon, which stated:

> Currently MMT has the ability to bottom load any and all trucks that arrive[] on the property. MMT recognizes that it would be safer if the asphalt were to be top loaded therefore MMT will work diligently toward completion if authorized to install a top loading system. If Marathon would authorize MMT to put in the infrastructure to top load a tank truck for said fee(s) this process would take approximately two (2) weeks or less to complete.

Doc. Ent. 40-4 at 2. The Court assumes this was followed in time by plaintiff's counsel's May 21, 2010 letter to defense counsel. Doc. Ent. 40-3.

However, the 8:12 p.m. May 21, 2010 electronic mail from McCall of Marathon to Robinson of MMT explains that:

> As we have previously discussed, bottom loading trucks presents too great of a safety risk for spills and as such is not a mechanically viable mechanism to facilitate sales. My understanding of the court order on 5/14 required MMT to make the product available for sale, which it will not be until we can safely top load trucks and ensure they do not enter a public roadway overweight. . . . Please let me know when you are able to safely load product out of Tank 109 and monitor truck weight so that we can consummate a sale.

Doc. Ent. 42-4. Defense counsel contends that this electronic mail shows that "Marathon clearly recognizes that the expense for any additional modifications, and/or the truck weight scales, should be its expense[.]" Also, defense counsel disputes the veracity of plaintiff's counsel's May 21, 2010 letter (Doc. Ent. 40-3). Doc. Ent. 42 at 6 ¶ 11. Furthermore, with respect to the

Court's May 14, 2010 order requiring defendants to "prepare all liquid asphalt currently held in

Tank 109

to a fully liquidized temperature and mechanically capable of removal and release to Marathon

immediately thereafter[,]" Doc. Ent. 36 at 2 ¶ 1, defendant contends that "MMT is certainly

capable of removing the asphalt from said Tank and then transferring/pumping it into a Tanker

truck's tank through the opening at the bottom of the truck's tank."  Doc. Ent. 42 at 16.

**Second, there are the alleged events of May 27, 2010.**  Plaintiff alleges that on May 27,

2010, MMT representatives "advised Marathon that samples of the material contained in Tank

109 would not be provided unless Defendants' counsel was granted access to speak with

representatives of Marathon directly."  Doc. Ent. 40 at 4 ¶ 13.  This argument appears to have

been generated by the May 26, 2010 text messages between Marathon and MMT employees

(Doc. Ent. 40-7 at 2), wherein the request for 5 more one gallon samples was answered, "per our

attorney he needs letters from [Maguire] and [Johnston] authorizing him to speak with

[Maguire]."  Also, plaintiff asserts, "[d]efendants' counsel confirmed that samples would not be

provided, and Marathon no longer had access to the MMT's facility."  Doc. Ent. 40 at 4 ¶ 13.

Plaintiff's counsel substantiates this argument with her May 27, 2010 letter to plaintiff's counsel

(Doc. Ent. 40-8), which memorialized counsel's same-day telephone conference and stated in

part, "Your position that you will not allow samples, access to the facility or communication

between representatives of Marathon and Midwest Marine, Inc. unless I provide you with written

authorization that you may contact my client directly is absurd and in flagrant violation of the

Court Order."  Elsewhere, plaintiff asserts, "[s]ix days later, on May 27, 2010 Defendants

refused to provide Marathon with access to its facility and samples of the product in Tank 109." Doc. Ent. 40-1 (Motion Brief) at 6.

However, defendants reply that "the issue of Marathon's latest request for further samples of the asphalt product in Tank 109 . . . and MMT's representative's request for authorization from Marathon's counsel of record in this matter, Amy Johnston, to allow MMT's counsel of record, Michael J. Connolly, to speak directly with Marathon's In House Counsel, John Maguire . . . as invited to do by Mr. Maguire . . . were not linked, as Marathon's counsel of record now alleges." While I note that McCall's May 27, 2010 9:54 a.m. text message to Robinson was apparently responded to only eighteen (18) minutes later (10:12 a.m.), defendants make the plausible argument that "[i]n no sense whatsoever does MMT's representative's [10:12 a.m. text message] to Marathon's representative ever even hint that MMT will not give Marathon the additional samples Marathon requests unless Marathon's counsel of record first grants MMT's counsel of record authorization to talk to Marathon's In House Counsel." Doc. Ent. 42 at 7-8 ¶ 13.

**Furthermore, during the June 30, 2010 hearing, defense counsel disputed that plaintiff's motion was the impetus for defendants' compliance.** In fact, he stated that defendants were not dilatory and want the product out of Tank 109 more than plaintiff, because Tank 109 would then be available to rent.

Accordingly, plaintiff's request for an award of costs and fees associated with this motion should be denied.

**d.**     Finally, plaintiff's request that the Court require defendants to:

> . . . pay Marathon for any diminution in value of the sale of the liquid asphalt product in Tank 109 *caused by Defendants' delay in rendering the product*

> *capable of removal*, based on posted market prices from the asphalt Market
> Reports as of May 24, 2010 compared to market prices on the date the product is
> capable of removal and transport from Defendant's facility[.]

Doc. Ent. 40 at 6 ¶ 6 (emphasis added).[9]  The parties dispute which method of removal - top loading (which both parties agree is the safer method) or bottom loading (which plaintiff alleges is too risky) - is required by the Court's May 14, 2010 order.

Specifically, I note defendant MMT's representative's May 21, 2010 5:59 p.m. electronic mail to plaintiff's representative which states that "[c]urrently MMT has the ability to bottom load any and all trucks that arrive[] on the property.  MMT recognizes that it would be safer if the asphalt were to be top loaded[.] [T]herefore[,] MMT will work diligently toward completion if authorized to install a top loading system.  If Marathon would authorize MMT to put in the infrastructure to top load a tank truck for said fee(s) this process would take approximately two (2) weeks or less to complete."  Doc. Ent. 40-4 at 2.  I also note plaintiff's representative's same-day 8:12 p.m. response that "bottom loading trucks presents too great of a safety risk for spills and as such is not a mechanically viable mechanism to facilitate sales. . . . Please let me know when you are able to safely load product out of Tank 109 and monitor truck weight so that we can consummate a sale."  Doc. Ent. 42-4 at 2.[10]

Upon consideration, the Court should conclude that plaintiff is not entitled to diminution in value caused by defendants' delay in making the product capable of removal.  **With respect**

---

[9]During the June 30, 2010 oral argument, plaintiff's counsel admitted that, while the market prices were determinable, the extent of the diminution in value would not be determinable until the amount of product retrievable from Tank 109 was calculated.

[10]Plaintiff's motion asserts that the absence of such a scale "renders the product in Tank 109 incapable of leaving MMT's facility."  Doc. Ent. 40-1 at 9.  This report and recommendation assumes that removal of the product from MMT's premises has been accomplished.

**to capability,** I note plaintiff's argument that my order "necessarily includes a 'safe' manner of removal and compliance with statutory and regulatory directives." Plaintiff also states that "[b]ottom-loading a tanker truck with hot liquid asphalt product is contrary to acceptable industry standards and has a high potential for spills, property damage and injuries." If truck transportation must be used, it is plaintiff's position that the safer method of top loading is required. Doc. Ent. 40-1 at 11. However, the MMT's representative's May 21, 2010 mail communicates the ability to bottom load trucks (Doc. Ent. 40-4). As defendants explain, "MMT is certainly capable of removing the asphalt from said Tank and then transferring/pumping it into a Tanker Truck's tank through the opening at the bottom of the truck's tank." Doc. Ent. 42 at 16.

 **With respect to delay,** it is not clear there was one. By way of background, plaintiff contends that Section 4 of the March 1, 2006 Asphalt Terminaling Agreement, which concerns services (Doc. Ent. 1-3 at 3-5), and Appendix A, which concerned tanks (Doc. Ent. 1-3 at 15) evidence that "truck loading was not contemplated by the parties." Doc. Ent. 40-1 at 12. This is consistent with defendants' allegation that "when the current Agreement was negotiated, Marathon knew that MMT did not have such truck weigh scales, but once again did not want to pay to have same put in." Doc. Ent. 42 at 6. As stated above, notes dated June 7, 2010, apparently addressed to defense counsel, allege that "McCall/Marathon has known that MMT did not have a truck loading station for them and that MMT did not have a truck scale." Doc. Ent. 42-3 at 8. The author of this note supports his/her statement by referencing electronic mail dated November 8, 2005, December 13, 2005, December 16, 2005 and December 23, 2005 (Doc. Ent. 42-3 at 2-4, 6) as well as a May 17, 2006 project update (Doc. Ent. 42-3 at 7).

I recognize plaintiff's allegation that defendants "have repeatedly obstructed Marathon's efforts to complete such a sale, including by demanding heat, rent and facility modification payments to which they are not entitled." Doc. Ent. 40-1 at 7. I note that, in his April 21, 2010 letter to plaintiff's counsel, defense counsel stated, "[w]e have asked you to discuss with your client the fairness of them paying the rent, heat and the costs for any product that was contained in Tank 109[.]" Doc. Ent. 42-6 at 2. In his May 3, 2010, letter to plaintiff's counsel, defense counsel stated, "[a]s of 2:20 p.m. May 3, 2010 the[re] has never been an agreement as to the sale and the proceeds of the product contained in Tank 109." Doc. Ent. 42-6 at 3.

Also, plaintiff claims the May 4, 2010 motion (Doc. Ent. 30) was filed "to order Defendants to permit the sale without obstruction, as time was of the essence in the asphalt market." Doc. Ent. 40-1 at 7. At the May 14, 2010 hearing, defense counsel noted "it is absolutely unfair and unequitable to not allow MMT to get paid for its out of pocket expenses . . . [w]e're not asking for a profit[,]" and "[s]o there will be the -– the month of May and an additional 27,000 plus the cost of the employees and transporting and the work that they'll have to do to get the product to the -– to the buyer." Doc. Ent. 43 at 20-21.

Subsequently, in its May 20, 2010 supplemental brief, plaintiff argued that "MMT will reap the benefit of this modification if it is able to convince another party to lease Tank 109 when empty. To force Marathon to pay for a modification required only due to fire, and for which MMT will retain the benefit is unjust and unwarranted." Doc. Ent. 38 at 8. Finally, my June 10, 2010 order provided that "determining the parties' entitlement to compensation for the items regarding which they seek immediate reimbursement . . . is an issue that goes to the merits

of the parties' claims and an assessment of damages and, therefore, is more appropriately determined through a dispositive motion or a trial." Doc. Ent. 41 at 13.

However, the Court should conclude that any delay caused by the foregoing debate about the requirements of the May 14, 2010 order does not translate into an award to plaintiff for any diminishing value of the product which results from a sale on July 1, 2010 instead of a sale on May 24, 2010. I am not convinced that defendants were engaging in dilatory behavior.

In the event the Court decides to award plaintiff relief pursuant to ¶ 6 of its prayer for relief (Doc. Ent. 40 at 6 ¶ 6), it should clarify the time line upon which to assess damages. For example, the significance of May 24, 2010 - a date proposed by plaintiff - as a starting point is unclear. Any damages calculation would be based upon the dates after May 14, 2010 during which defendants were not in compliance. Perhaps plaintiff would argue that this period of time is May 21, 2010 - plaintiff alleges that defendants violated the May 14, 2010 order when it was only one week old (Doc. Ent. 40-1 at 13) - to June 8, 2010 (during the hearing, plaintiff's counsel mentioned that compliance with the Court's May 14, 2010 order did not occur until one week after the June 1, 2010 motion was filed).[11] Also, plaintiff's counsel communicated that the product was in the process of being removed; however, it is not clear on what date that began. At this time, even if Tank 109 was not emptied of product until July 1, 2010 - a date after the June 1, 2010 filing of the instant motion - there are too many blanks for the Court to confidently calculate an award of diminution.

## III.  **NOTICE TO PARTIES REGARDING OBJECTIONS:**

---

[11]During the hearing, plaintiff's counsel mentioned a June 7 or 8, 2010 "novel approach".

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE
Dated: 7/9/10

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on July 9, 2010.

                    s/Eddrey Butts
                    Case Manager